UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DORA JACKSON, on behalf of<br>herself and all others similarly situated. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAL-MART STORES, INC., a Delaware )<br>Corporation and SAM'S WEST, INC., a )<br>Delaware Corporation, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 05-269 JJF<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

GARY S. NITSCHE, ESQUIRE (#2617)
ROBERT J. BONSIGNORE, ESQUIRE
WEIK, NITSCHE, DOUGHERTY
& COMPONOVO
1300 North Grant Avenue, Sutie 101
Wilmington, DE 19806
(302) 655-4040

Attorneys for Plaintiff, Dora Jackson

Dated: June 29, 2005

## TABLE OF CONTENTS

I      INTRODUCTION.....................................................................................1

II.    SUMMARY OF FACTS.........................................................................2

III.   ARGUMENT.........................................................................................3

       A.    Delaware Law Expressly Permits Alternative Pleading.......................4

       B.    Plaintiff Has Pled a Viable Claim for Conversion.............................5

       C.    The Class Period Should Not be Limited to One Year.........................7

IV.    CONCLUSION......................................................................................8

i

## TABLE OF AUTHORITIES

*Cases*

1. *Bank of the West v. Superior Court*
   833 P.2d 545 (Cal 1992)............................................................5

2. *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*
   822 A.2d 1024 (Del. 2003).......................................................4

3. *Drug, Inc. v. Hunt*
   168 A. 87 (Del. 1933)...............................................................5

4. *Fagnani v. Integrity Finance Corporation*
   167 A.2d 67 (Del. Super. 1960)................................................7

5. *Fleer Corp. v. Topps Chewing Gum, Inc.*
   539 A.2d 1060 (Del. 1988).......................................................4

6. *Goodrich v. E.F. Hutton Group, Inc.*
   542 A.2d 1200 (Del. Ch. 1988).................................................6

7. *Halliburton Co. v. Highlands Ins. Group, Inc.*
   811 A.2d 277 (Del. 2002)..........................................................2

8. *In re OODC, LLC*
   321 B.R. 128 (Bankr. D. Del. 2005)...........................................3

9. *Katz v. First National Bank of Glen Head*
   568 F.2d 964 (2d Cir. 1977).......................................................6
   434 U.S. 1069 (1978)................................................................6

10. *Local Union 199, Laborer's Union of North America v. Plant*
    297 A.2d 37 (Del. 1972)...........................................................3

11. *Maio v. Aetna, Inc.*
    221 F.3d 472 (3d. Cir. 2000).....................................................4

12. *Manchester v. Rzewnicki*
    777 F. Supp. 319 (D. Del. 1991)...............................................3
    958 F.2d 364 (3d Cir. 1992)......................................................3

13. *Owens v. Andrews Bank & Trust Co.*
    220 S.E.2d 116 (S.C. 1975).......................................................6

14. *Plant v. Catalytic Construction Company*
    287 A.2d 682 (Del. Super. 1972)......................................................3

15. *Scheuer v. Rhodes*
    416 U.S. 232 (1974)......................................................................3

16. *Spence v. Funk*
    396 A.2d 967 (Del. 1978)..............................................................3

17. *Thorpe by Castelman v. CERBCO, Inc.*
    676 A.2d 436 (Del. 1996)..............................................................5

18. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*
    872 A.2d 611 (Del. Ch. 2005)........................................................3

## Other Rules and Statutes

63 Am. Jur. 2d, *Restitution and Implied Contracts* § 3 (1973)...........................4

10 *Del. C.* § 8111................................................................................1

19 *Del. C.* §§ 902, 1102 and 1113.........................................................4,5

Del. Ch. Ct. R. 8(e)(2)........................................................................2

Delaware Superior Court Civil Rule 8(e)(2)................................................4

The Restatement (Second) of Torts §242 cmt. f (1965).....................................6

5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)3

## I.    INTRODUCTION

This important class action challenges Wal-Mart Stores, Inc. and Sam's Club's ("Wal-Mart") systemic practice of failing to pay its hourly employees in Delaware for all time worked. As detailed in the Complaint, Wal-Mart has implemented several uniform practices by which it wrongfully deprives its hourly employees of compensation for their labor in violation of both Delaware statutory and common law. *See* Complaint ¶¶    *passim*. This case concerns the following two related corporate practices: (1) Wal-Mart's surreptitious manipulation of its time records to alter and/or delete hours worked; and (2) Wal-Mart's failure to pay for recorded work that was not recognized by its time-keeping system. As a result, Wal-Mart has been able to inequitably retain hourly wages

rightfully earned by its Delaware employees without their knowledge or consent as well as artificially lower its labor costs (because its employees are not being paid for all of the time they work) and unfairly increase its profits.

The Complaint further alleges that Plaintiff was unaware that Wal-Mart had been manipulating its payroll records to cheat its hourly employees out of earned wages until the nefarious practice was publicly exposed by the New York Times in April of 2004. *See* Complaint at  ¶¶ 3, 19 and 24. Significantly, both Wal-Mart's senior-most executives and business records have since confirmed that Wal-Mart routinely shaved time from payroll. *Id.* at ¶¶ 2, 21-23.

Rather than compensate its hourly employees for their labor, however, Wal-Mart filed a motion to dismiss on May 12, 2005, seeking to prevent tens of thousands of employees from obtaining their earned wages. In this regard, Wal-Mart self-servingly argues that the class period should be limited to one year as proscribed by 10 *Del. C.* ¶ 8111. That limitation is not applicable; however, because Wal-Mart actively concealed its time-manipulation practices, thereby tolling the statute until Plaintiff could have reasonably discovered Wal-Mart's wrongdoing.

1

Wal-Mart's attempt to evade Plaintiff's equitable claims is equally misguided. "There is no doubt that alternate pleading" is permissible in Delaware. *See Halliburton Co. v. Highlands Ins. Group, Inc.*, 811 A.2d 277, 280 (Del. 2002); *see also* Del. Ch. Ct. R. 8(e)(2). Thus, the fact that Plaintiff seeks relief under Delaware statutory law does not prevent her from also asserting applicable alternative theories of liability.

Lastly, Wal-Mart erroneously contends that stealing monies from its employees does not constitute a tort. In Delaware, a claim for conversion is stated when a defendant wrongfully exercises dominion over the property of another, such as here, where Wal-Mart secretly kept monies belonging to its hourly employees for its own use.[1]

In sum, because the Complaint states causes of action for conversion and equitable relief, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss Counts III and IV of the Complaint.

## II.    SUMMARY OF FACTS

This suit was commenced after the Plaintiff fortuitously learned from an article appearing in the *New York Times* in April of 2004 that Wal-Mart had a uniform practice of cheating its hourly employees out of earned wages. *See* Complaint at ¶¶ 3, 19 and 24. In that article, a Wal-Mart executive revealed for the first time that Wal-Mart was secretly shaving time from its payroll records, thereby enabling it to avoid paying its employees for all time worked. *Id.* at ¶ 19. The article also noted that as early as *April 2003*, Wal-Mart had created and circulated to all of its store managers a videotape and "payroll integrity" memorandum discussing that unlawful practice. *Id.*

One particular method of shaving time was so widespread at Wal-Mart that it coined its own term for the practice, according to the article: "the one-minute clock-out." *Id.* at ¶¶ 21 and

---

[1] It is worth noting that Wal-Mart has failed to tender any of its employees' monies that it has wrongfully exercised dominion and control over.

2

23. This term referred to Wal-Mart's practice of manually clocking an employee out only one minute after the employee had clocked back in from a break during the middle of their shift. *Id.* As a result of this practice, Wal-Mart was able to realize approximately *four hours* of free labor at the employee's expense (the equivalent of an entire afternoon). *Id.* at ¶ 25.

Confronted by hourly employees in like litigation pending in other states, Wal-Mart was forced to produce a videotape and other materials that confirmed the existence of its time-shaving practices. *Id.* at ¶ 24. As Wal-Mart admitted on the videotape, by deleting the "final punch … that's four hours [the employee] wasn't paid for." *Id.* at ¶ 25.

Importantly, that newly discovered evidence led to the discovery of tens of thousands of instances whereby Wal-Mart secretly manipulated its payroll records to avoid paying its hourly employees, or otherwise simply failed to pay its employees, for all time worked. Prior to reviewing both the *New York Times* article and some incriminating evidence produced by Wal-Mart in like litigation, Plaintiff was unaware of those time shaving practices.

## III.   ARGUMENT

Delaware courts view motions to dismiss with disfavor. *See e.g., In re OODC, LLC.* 321 B.R. 128, 134 (Bankr. D. Del. 2005); *see also Manchester v. Rzewnicki*, 777 F. Supp. 319, 324 (D. Del. 1991), *aff'd*, 958 F.2d 364 (3d Cir. 1992); *accord*, 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990). Indeed, courts may dismiss a complaint "only if it finds that the plaintiff cannot prove any set of facts upon which relief may be granted." *In re OODC*, 321 B.R. at *134* (citation omitted); *accord Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974*); see also Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

In considering the sufficiency of a complaint, the court must accept as true the facts alleged therein, and make any inferences that can be drawn from those facts in the plaintiff's favor. *Plant v. Catalytic Construction Company,* 287 A.2d 682, 686 (Del. Super. 1972) *aff'd sub nom.* Local Union 199, Laborer's Union of North America v. Plant, 297 A.2d 37 (Del. 1972); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 619 (Del. Ch. 2005).

3

Importantly, the issue when evaluating a motion to dismiss "is not whether the complainant will ultimately prevail but rather whether the complainant is entitled to offer evidence in support of his claim" *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d. Cir. 2000) (citations omitted). With these standards in mind, Plaintiff addresses Defendants' arguments below.

### A.    Delaware Law Expressly Permits Alternative Pleading

Ignoring both Delaware Rules of Civil Procedure and Delaware Supreme Court precedent, Wal-Mart argues that Plaintiff and the putative Class' equitable claims must be dismissed because they have an adequate remedy at law. *See* Def. Br. at 4-5. Wal-Mart is mistaken. Delaware Superior Court Civil Rule 8(e)(2) expressly authorizes parties to plead as many separate claims and/or defenses as they have, regardless of consistency and whether such claims are based on legal or equitable grounds. *Accord, Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1031 (Del. 2003). Accordingly, Wal-Mart, having been unjustly enriched by its misconduct, must disgorge all of its ill-gotten gains, *as well as* pay Plaintiff back wages and other corresponding damages under Delaware statutory law.

In this case, Plaintiff has alleged that Wal-Mart utilized two distinct corporate practices to deprive its hourly employees of earned wages. First, Wal-Mart secretly tampered with its payroll records to delete hours worked, which in turn deprived its employees of earned wages. If proven, Wal-Mart will be required to pay Plaintiff's back wages, interest, and other related damages under 19 *Del. C.* §§ 902, 1102 and 1113.

Pursuant to Plaintiff's equitable claims, Wal-Mart will also be required to disgorge any other ill-gotten gains as a result of that inequitable conduct. In Delaware, unjust enrichment is defined as the "unjust retention of a benefit to the loss of another or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988), *quoting* 63 Am. Jur. 2d, *Restitution and Implied Contracts* § 3 (1973). Clearly, if Plaintiffs can prove that Wal-Mart

4

had a corporate practice of failing to pay its employees for all time worked, the Court may order Wal-Mart to disgorge such profits and/or ill-gotten gains.

Second, Plaintiff has alleged that beginning as early as January 1, 1997, Wal-Mart routinely required its employees to work without pay, which it accomplished in part by failing to pay its employees for work that was recorded in its electronic databases but was not otherwise recognized by Wal-Mart's time-keeping system. Plaintiff has further alleged that Wal-Mart was unjustly enriched by that practice and thus, should be ordered to disgorge any benefits and/or profits resulting from its misconduct. Such recovery is distinct from any wages that may also be recoverable under 19 *Del. C.* §§ 902, 1102, and 1113. *See e.g., Thorpe by Castelman v. CERBCO, Inc.*, 676 A.2d 436, 437 (Del. 1996) (defendant who breached fiduciary duty was required to disgorge any benefits obtained from such breach even though damages were unavailable as a remedy); *see also, Bank of the West v. Superior Court*, 833 P.2d 545, 554 (Cal. 1992) (restitution differs from damages in that it "ask[s] [the defendant] to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct") (citations omitted).

### B.    Plaintiff Has Pled a Viable Claim for Conversion

Wal-Mart wrongly contends that it cannot be held liable for converting Plaintiff's wages, because stealing monies from payroll supposedly amounts to nothing more than a mere failure to pay a debt. Plaintiff has stated a claim for conversion, however, by alleging that Wal-Mart wrongfully exercised dominion over employee wages by deleting large amounts of time worked from its payroll records. *See e.g., Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933) ("[A]ny distinct act of dominion wrongfully exerted over property of another in denial of his right or inconsistent with it, is a conversion."). Moreover, the monies at issue here do not constitute a contractual debt. Thus, the case law relied upon by Wal-Mart governing bank deposits and interest payments are inapposite.

5

Wal-Mart cites to *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) for the unremarkable proposition that an action for conversion will not lie to enforce an obligation to pay a debt. *See* Def. Br. at 3, 4. The term "debt, as referenced in both *Hutton* and The Restatement (Second) of Torts §242 cmt. f (1965)), refer to the nature and application of the debtor-creditor relationship *central* to banking. Both *Hutton* and The Restatement of Torts merely confirm that money deposited into a bank account does not constitute a transfer of property to a bank or other financial institution. *Accord Katz v. First National Bank of Glen Head*, 568 F.2d 964, 969 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069 (1978) ("a deposit creates a debt owed to the depositor by the bank and does not constitute a parting with property by the depositor"). Simply put, that doctrine allows banks to allocate funds amongst different accounts to satisfy debts as needed without becoming liable in conversion for any particular monies deposited. Importantly, that doctrine has no application to the employer-employee relationship and/or the conversion of payroll monies.

Whether an employer is liable for the tort of conversion for secretly stealing wages from its hourly employees remains an open question in Delaware. However, a claim for conversion is actionable in this state when a defendant wrongfully exercises dominion or control "over the property of another, in denial of his right, or inconsistent with it." *Hunt*, 168 A. at 93. Clearly, in alleging that Wal-Mart secretly manipulated its electronic payroll records to keep for itself monies belonging to its hourly employees, Plaintiff has stated a claim for conversion.

The reasoning applied in *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975) is particularly instructive here. There, although the court recognized that conversion will not lie for the mere payment of a debt, the court further explained that such an action will lie where the plaintiff establishes more onerous conduct by the defendant, such as use of the money for its own wrongful purpose to the plaintiff's detriment. *See id.* at 119-20.

Nothing can be more onerous or offensive than the largest, and perhaps richest, company in the nation secretly stealing money from its hourly employees in order to increase corporate

6

profits. While Wal-Mart would obviously like to limit its liability to one year by characterizing this case as a simple wage dispute, such a characterization misconstrues both the nature of Plaintiff's claims and the tort of conversion. When a corporation intentionally tampers with its payroll records to erase hours worked, such corporation is liable for conversion and subject to punitive damages.

Accordingly, Wal-Mart's attempt to dismiss the conversion claim should be rejected.

## C. The Class Period Should Not Be Limited To One Year

The Court should also reject Wal-Mart's attempt to limit the class period to one year. Specifically, Wal-Mart argues that the applicable statute of limitations should not be tolled because its hourly employees should have known that it was tampering with its electronic database to steal employee wages.

Contrary to Wal-Mart's assertion, its theft was not readily identifiable. To begin with, hourly employees did not have access to Wal-Mart's corporate payroll database, and thus, could not have analyzed the data to uncover Wal-Mart's time-shaving practices. Moreover, although Wal-Mart stole large amounts of monies from the class as a whole, the individual losses suffered by each employee were fairly small given the nature of their employment and low hourly wage.

For instance, Plaintiff has alleged that Wal-Mart routinely inserted unpaid meal periods into its employee records, which in turn deprived its employees of thirty minutes pay. Under that scenario, the aggrieved employee would have been cheated out of approximately three to four dollars in a two week pay period. Even when Wal-Mart utilized its infamous one-minute clock out, the aggrieved employee typically lost no more than thirty dollars over a two week pay period. Thus, Wal-Mart cannot seriously contend that it was objectively unreasonable for its employees not to uncover Wal-Mart's time-shaving practices until such practices were exposed by the New York Times. At any rate, the Court should not grant Wal-Mart's motion to dismiss because the reasonableness of Plaintiff's conduct presents a question of fact. *Fagnani v. Integrity Finance Corporation*, 167 A.2d 67 (Del. Super. 1960) (motions to dismiss must

7

"present[ ] a question of law and cannot be granted where the pleading raises any material issues of fact").

In sum, the Plaintiff has satisfied the pleading requirement by setting forth important details about Wal-Mart's deceptive actions. In the Complaint, Plaintiff has *specifically* identified several types of time-shaving practices that Wal-Mart utilized to secretly steal time from its employees. The Plaintiff has also identified the sources of that information, as well as evidence confirming the existence of those practices. Given that Wal-Mart actively concealed its wrongdoing, and has thus far have not produced any documents in this proceeding, Plaintiff still has no way of knowing the full nature and extent of Wal-Mart's misconduct.

### IV.  CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied with respect to Counts III and IV.

Respectfully submitted,

DATED: June 29, 2005

/s/ GARY S. NITSCHE   ID# 2617
Gary S. Nitsche, P.A.
WEIK, NITSCHE, DOUGHERTY &
COMPONOVO
1300 N. Grant Ave., Suite 101
P.O. Box 2324
Wilmington, DE 19899
(302) 655-4040

Robert J. Bonsignore
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Tel:  (781) 391-9400
Fax:  (781) 391-9496

8

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing

Plaintiff's Answering Brief Opposing Defendant's Motion to Dismiss to be served upon counsel

of records in the manner of e-filing and hand delivery to his respective address as follows:

Barry M. Klayman, Esquire
Wolf, Block, Schorr & Solis-Cohen
1100 North Market Street, Suite 101
Wilmington, DE  19801