05-cv-269(JJF)

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: : <br> : <br> WAL-MART WAGE AND HOUR : <br> EMPLOYMENT PRACTICES : <br> LITIGATION : <br> : | MDL DOCKET NO. _____ |

**MEMORANDUM IN SUPPORT OF MOTION
OF PLAINTIFF NANCY HALL FOR TRANSFER AND CONSOLIDATION
OF RELATED ACTIONS TO THE DISTRICT OF NEVADA
PURSUANT TO 28 U.S.C. § 1407**

**I. INTRODUCTION**

Movant, Nancy Hall, ("Plaintiff") respectfully submits this Memorandum in support of her Motion, pursuant to 28 U.S.C. § 1407 ("Section 1407") and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, to transfer and consolidate for pretrial purposes six substantially similar cases alleging that defendants were systematically time shaving hourly employees' payroll records. Nancy Hall

requests that these six actions be consolidated for pretrial purposes and transferred to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1407.[1]

These actions squarely fit the statutory prerequisites for transfer and consolidation. First, each of the complaints alleges that Wal-Mart surreptitiously deleted time from its payroll records and/or otherwise failed to pay its hourly employees for all reported time worked. Thus, the six actions clearly "involve[d] one or more common questions of fact." Second, the transfer will further "the convenience of the parties and witnesses," since each of the plaintiffs will be deposing the same witnesses and obtaining the same corporate documents from Wal-Mart in order to prove their respective cases. Lastly, the transfer of the six like cases to Nevada "will promote the just and efficient conduct of [the] actions" by ensuring centralized oversight of pretrial fact development in what are likely to be identical employment class actions. *See* 28 U.S.C. § 1407(a).

## II. BACKGROUND

Six class actions are currently pending against Wal-Mart Stores, Inc. and Sam's West, Inc. (collectively "Wal-Mart") concerning its systematic failure to pay its hourly employees for all reported time worked, including overtime hours. The plaintiffs in each of the actions have alleged that Wal-Mart deleted thousands of hours of time worked from its employee payroll records through a practice known as "time shaving".

As further alleged in each of these complaints, Wal-Mart perpetrated this practice by: (1) altering employee records to make it appear as if the employees' workdays ended

---

[1] Section 1407 states:
> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

one minute after their meal period concluded, effectively denying employees their pay for the three or four hours of work they performed after the meal period (i.e. the "one-minute clock out" practice); (2) deleting overtime hours that employees worked in excess of forty hours (i.e. "the 40 hour club"); (3) deleting employee punches so that employees would not be paid for an entire day or afternoon of work; (4) altering employee time records to make it appear as if employees took meal periods when in fact they did not, resulting in unauthorized deductions from the employees' paychecks in the amount of 30 or 60 minutes per occurrence; and (5) failing to pay employees for all reported time worked. The various complaints allege violations of state minimum wage and/or overtime statutes, conversion, unjust enrichment/quantum meruit/restitution and fraudulent concealment. The six civil actions at issue here are as follows:

- *Nancy Hall, on behalf of herself and all others similarly situated v. Wal-Mart Stores, Inc. and Sam's West, Inc.*, Civil Action No. 05-01099 (D. Nev.) (Honorable Philip M. Pro);

- *John Luce, on behalf of himself and all others similarly situated v. Wal-Mart Stores, Inc. and Sam's West, Inc.*, Civil Action No. 05-cv-01019 (D. S.D.) (Honorable Charles B. Kornmann);

- *John McFarlin, on behalf of himself and all others similarly situated v. Wal-Mart Stores, Inc. and Sam's West, Inc.*, Civil Action No. 05-6754 (D. AK.) (Honorable James K. Singleton);

- *Dora Jackson, on behalf of herself and all others similarly situated* v. Wal-Mart Stores, Inc. and Sam's West, Inc., Civil Action No. 05-00269 (D. Del.) (Honorable Joseph J. Farnan, Jr.);

- *Reginald Paul Jackson, Phil Ankenman, Bryan Trenkle, and Danny Christy v. Wal-Mart Stores, Inc. and Sam's West, Inc.*, Civil Action No. 05-00424 (D. Idaho) (Honorable Edward J. Lodge);

- *Tammy L. Poha and Moke K. Palakiko, on behalf of themselves and all others similarly situated v. Wal-Mart Stores, Inc. and Sam's West, Inc.*, (D. HI) (Honorable Susan Oki Mollway)

Plaintiff seeks to have the *Luce, McFarlin, Jackson, Jackson* and *Poha* actions transferred to the District of Nevada and consolidated with the *Hall* matter, which is already proceeding in that jurisdiction. Transfer and consolidation is appropriate because these cases involve common factual questions, transfer will further the convenience of the parties and the witnesses, and will promote the just and efficient conduct of these actions.

The District of Nevada is the appropriate place for transfer and consolidation because the *Hall* action has progressed the furthest.[2] Responsive pleadings have already been served, a scheduling order has been proposed and discovery has been initiated. In addition, the District of Nevada has the resources and judicial expertise to properly conduct this case and is readily accessible from virtually any state in the country.

### III. ARGUMENT

**1. Transfer and Consolidation of the Six Cases for Coordinated Pretrial Proceedings is Appropriate**

In relevant part, 28 U.S.C. § 1407(a) specifies that the Judicial Panel on Multidistrict Litigation (the "Panel") may transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination that (1) the cases "involve[e] one or more common questions of fact", (2) the transfers would further "the convenience of the parties and witnesses" and (3) the transfers will promote the just and efficient conduct of [the] actions." As explained below, the six actions under consideration clearly meet these criteria and should be transferred and consolidated in the District of Nevada for pretrial proceedings.

---

[2] While discovery has also been initiated in the Alaska proceeding, Plaintiff respectfully suggests that Alaska would not be an appropriate forum given both the small number of stores involved as well as the obvious logistical problems associated with litigating these related cases in that distant forum.

4

**A.      The Related Actions Involve One or More Common Questions of Fact**

The first requirement of Section 1407 – that the cases "involv[e] one or more common questions of fact" is plainly met here. The six cases before this Panel contain numerous common questions of law and fact, including:

1. Whether Wal-Mart failed to pay its employees for all time worked;

2. Whether Wal-Mart is liable for conversion as a result of surreptitiously deleting time worked from it payroll database to avoid paying Plaintiff and the Class for all hours worked;

3. Whether Wal-Mart wrongfully exercised and continues to exercise dominion over monies and property owed to Plaintiff and the Class for work performed;

4. Whether Wal-Mart violated state minimum wage statutes by failing to pay employees at least the minimum wage for all time worked;

5. Whether Wal-Mart violated state laws by failing to timely pay its employees for all time worked;

6. Whether Wal-Mart violated state laws by failing to keep accurate payroll records;

7. Whether Wal-Mart violated state overtime and/or wage statutes as a result of its time shaving practices and/or its failure to pay former employees for all hours worked;

8. Whether Wal-Mart acted toward Plaintiff and the Class with malice and a reckless disregard for the rights of the class members;

9. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

10. Whether Wal-Mart took steps to actively conceal the conduct alleged herein from Plaintiff and the Class; and

11. Whether Wal-Mart's electronic databases contain virtually all of the data from which Plaintiff can objectively establish that Wal-Mart's uniform time shaving practices routinely occurred on a class-wide basis.

The factual issues to be determined in each of the actions are nearly identical, making transfer and consolidation highly appropriate. *See, e.g., In re "Factor VIII or IX Concentrate Blood Prods." Prod. Liab. Litig.,* 853 F.Supp. 454, 455 (J.P.M.L. 1993) (common questions of fact existed regarding defendants' conduct); *In re Cuisinart Food Processor Antitrust Litig.,* 506 F.Supp. 651, 655 (J.P.M.I. 1981) (*"Cuisinart Food Processor"*) (noting that transferred actions "share[d] numerous questions of fact concerning the existence vel non of the alleged conspiracy and its scope, participants, means of operation and effects.") Given the virtually identical allegations and issues presented in each of these class actions, consolidation is highly appropriate and is should be granted. *See, e.g., In re Alert Income Partners Sec. Litig.,* 788 F. Supp. 1230, 1231 (J.P.M.L. 1992); *In re Oil Spill by" Amoco Cadiz" Off Coast of France on March 16, 1978,* 471 F. Supp. 473, 478 (J.P.M.L. 1979) (where common questions predominate, first factor favoring consolidation met even where some differing legal theories are present); *In re Litigation Arising From Termination of Retirement Plan for Employees of Firemen's Fund Ins. Co.,* 422 F. Supp. 287, 290 (J.P.M.L. 1976).

In all of the related cases, plaintiffs' proof of class-wide allegations will involve the same evidence concerning defendants' allegedly unlawful, systematic corporate misconduct that resulted in the nonpayment of large sums of wages to its hourly employees.[3] Thus, it is clear that the first prong of section 1407 - whether common issues are presented in each action - weighs in favor of consolidation.

B.  **Consolidation Will Further the Convenience of Parties and Witnesses**

The second prong of Section 1407 is also satisfied, since consolidation of the six cases will serve "the convenience of parties and witnesses." Indeed, the plaintiffs in each of the six pending actions will depose the same core set of corporate employees and officers who are believed to have knowledge of Wal-Mart's clandestine time-shaving practices. Plaintiffs will also rely upon the same voluminous set of corporate documents, policies, studies and analysis to prove the nature and extent of Wal-Mart's corporate wrongdoing. Without consolidation, there is a potential for duplicative discovery demands and redundant depositions. Consolidation will solve this problem by enabling a single judge to formulate a pretrial program that will minimize witness inconvenience and overall expense for all the parties involved. Moreover, it is undisputed that the savings in both time and expense resulting from consolidation of these actions will benefit the plaintiffs, the defendants and more importantly the judicial system as a whole. *See, e.g. Cuisinart Food Processor,* 506 F. Supp. at 651 (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities."); *In re Stirling Homex Corp. Sec. Litig.,* 405 F. Supp. 314, 315 (J.P.M.L. 1975) ("[W]e are confident that Section 1407 treatment will allow the *Fernon*

---

[3] The complaints allege that upper management reviewed and analyzed payroll records and implemented the time shaving practices. In addition, management concealed such practices from plaintiffs (its own employees) and the public at large.

plaintiffs to experience a net savings of time, effort and expenses through pooling their resources with other plaintiffs in the transferee district who share similar interests.").

In sum, because consolidation will serve the requisite "convenience of parties and witnesses," transfer and consolidation of the six related actions is warranted in this case.

### C. Consolidation Will Promote Just and Efficient Conduct of These Actions

Consolidation is also strongly recommended in accordance with the third factor considered by the Panel pursuant to Section 1407 -- whether consolidation will "promote the just and efficient conduct of [the] actions." Without question, this factor is satisfied here. First, where as here, meaningful discovery has not yet begun in any of the related actions, consolidation will prevent duplicative discovery and conflicting pretrial rulings, as set out above, and it will also result in a "substantial savings of judicial time and resources." *See In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975); *see also In re European Rail Pass Antitrust Litig.*, No. MDL 1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (ordering cases transferred to a single district in order "to avoid duplicative discovery"); *In re Fine Paper Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) ("Section 1407 transfer . . . is necessary in order to prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial rulings.").

Clearly, the consolidation and coordination of these similar actions will prevent the problems identified by the court in the *In re Fine Paper Antitrust Litigation* by streamlining discovery and conserving resources. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp.2d 1385, 1386 (J.P.M.L. 2002); *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979). For instance, since the

parties will be requesting and relying upon the same core set of corporate documents and witnesses, coordination will avoid wasteful duplicative discovery. Moreover, to the extent the parties engage in any discovery disputes and motion practice, such issues can be uniformly resolved in a single proceeding, rather than six separate hearings that may lead to inconsistent rulings. Clearly, the corresponding savings in time and expense will benefit both parties and the courts. *See Cuisinart Food Processor*, 506 F. Supp. at 655 (transferring actions would result in "significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

Second, consolidation will facilitate the consistent resolution of class action issues. It is well settled that transfer and coordination is appropriate where the possibility of inconsistent rulings on class certification issues exist. *See, e.g., In re Commercial Money Center, Inc., Equipment Lease Litig.*, 229 F. Supp.2d 1379. 1380 (J.P.M.L. 2002) (finding that consolidation of numerous actions filed nationwide would prevent inconsistent rulings); *In re Roadway Express, Inc. Employment Practices, Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) ("since conflicting and overlapping class allegations contained in the complaints raise the induitable possibility of inconsistent class determinations by courts of coordinate jurisdiction" transfer to a single district is desirable).

        1. **Consolidation Will Prevent Duplicative Discovery and Conflicting Pretrial Rulings**

As discussed above, the complaints in the six pending related actions contain substantially identical factual allegations. Where "an analysis of the complaints reveals a commonality of factual issues," transfer "is necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings." *In re A.H. Robbins*

*Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975). This will benefit the parties and conserve overtaxed judicial resources. *See In Re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553 (J.P.M.L. 1994) ("*TMJ Implants*") (centralization "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, . . . and conserve the resources of the parties, their counsel and the judiciary"); *In re Silicone Gel Breasts Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1100 (J.P.M.L. 1992) (same).

Given the common factual questions raised by the parties in each of the pending actions, and the reliance of each action on substantially the same set of documents, extensive discovery will be duplicated absent consolidation of the actions.[4] In particular, discovery requests and depositions of the executives and employees involved in the unlawful practices may be taken multiple times on the same subjects absent consolidation. Moreover, many of the same pretrial disputes are likely to arise in each case, such as issues concerning the nature and scope of discovery, motions to dismiss and determinations regarding class certification.

As previously discussed, consolidation will assure that the parties to these actions are not subject to inconsistent pretrial rulings regarding these various pivotal issues – always a critical consideration in determining whether cases should be consolidated under Section 1407. *See In re Cross – Fla. Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971) ("Cross-Fla. Barge Canal") (consolidation of two actions ordered because "consolidation will eliminate the likelihood of repetitive discovery in [certain] areas, serving the convenience of the parties and witnesses and furthering the just and efficient conduct of the litigation"); *In re Multi-Piece Rim Prods.*, 464 F. Supp. at 974

---

[4] Plaintiffs will all seek the same voluminous set of corporate documents.

(consolidation necessary "to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning . . . common factual issues.") *In re First Nat'l Bank, Heavener Okl. (First Mortgage Revenue Bonds) Sec. Litig.,* 451 F. Supp. 995, 997 (J.P.M.L. 1978) (*"First Nat'l Bank"*) (Transfer "necessary, even though only two actions are involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings."); *Cuisinart Food Processor,* 506 F. Supp. at 655 (transferring actions would result in "a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities"); *In re Amino Acid Lysine Antitrust Litig.,* 910 F. Supp. 696, 698 (J.P.M.L. 1995) (consolidation and coordination is appropriate to "conserve the resources of the parties, their counsel and the judiciary").

### 2. Transfer Will Facilitate the Uniformity Of Class Action Treatment

The fact that the plaintiffs in each of these actions will seek certification of substantially similar putative classes makes these actions particularly attractive for consolidation. The Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists." *In re Sugar Indus. Antitrust Litig.,* 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *see also TMJ Implants,* 844 F. Supp. at 1554 ("[C]entralization is necessary in order . . . to prevent inconsistent pretrial rulings (especially with respect to class certifications and summary judgments)"); *In re Roadway Express.,* 384 F. Supp. at 613 ("[T]he existence of and the need to eliminate [the possibility of inconsistent class determination] presents a highly persuasive reason favoring transfer under Section 1407."); *In re Plumbing Fixtures Cases,* 298 F. Supp. 484, 493 (J.P.M.L. 1968) (Transfer

necessary to avoid "pretrial chaos in conflicting class action determinations"); *Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues."); *In re Mutual Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 639-40 (J.P.M.L. 1973) ("[W]e have frequently held that the possibility for conflicting class determinations under [Fed.R.Civ.P. 23] is an important factor favoring transfer of all actions to a single district."); *In re Commercial Money Center.*, 229 F. Supp. 2d at 1380 (finding that consolidation of 23 actions filed nationwide would prevent inconsistent rulings); *In re Cement and Concrete Antitrust Litig.*, 437 F. Supp. 750, 752 (J.P.M.L. 1977) ("since duplicating or overlapping classes are sought in most of the actions, transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations").

As noted above, an examination of the putative classes, as described in the six complaints, demonstrates that the proposed classes and many of the claims are virtually identical.[5] Because of this similarity, the arguments presented both for and against certification should be identical. Thus, there will be a substantial possibility of inconsistent rulings on class certification and other class action related issues if these cases are not consolidated. Given the identity, or close similarity, of the proposed classes in these actions, the parties and the courts would benefit from having a single judge oversee the class action issues to avoid duplicative efforts and inconsistent rulings. *See, e.g., In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.I. 1995) ("Centralization under Section 1407 is necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to overlapping class certification requests)."); *In re Corn Sweeteners Antitrust Litig.* 910 F. Sup. 696, 699 (J.P.M.L. 1995)

---

[5] Following consolidation, in all likelihood, plaintiffs will file a consolidated amended complaint.

(same); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 121 (J.P.M.L. 1983) (centralization necessary where overlapping class certification sought in all relevant actions); *Cuisinart Food Processor*, 506 F. Supp. at 655, *In re Resource Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

### 3. These Actions are Sufficiently Complex to Warrant Transfer

Class actions alleging employment practices, such as these six actions, have been frequently consolidated because they almost always involve large numbers of litigants residing in far-flung federal districts whose common injuries are predicated on the same core of common facts. As a result, the Panel has consistently and repeatedly found employment practices litigation sufficiently complex to warrant transfer. *See, e.g., In re GMAC Insurance Management Corp. Overtime Pay Litigation*, 342 F. Supp. 2d 1357 (J.P.M.L. 2004); *In re Union Pacific Railroad Co. Employment Practices Litigation*, 314 F. Supp. 2d 1383 (J.P.M.L. 2004); *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, (No. II), 381 F. Supp. 2d 1380 (J.P.M.L. 2005).

The Panel has stated that where issues involved are sufficiently complex and where consolidation will prevent the duplication of discovery and pretrial rulings, it will not require large numbers of pending cases as a prerequisite to granting consolidation under Section 1407. *See, e.g., First Nat'l Bank*, 451 F. Supp. at 996; *New Mexico Natural Gas*, 482 F. Supp. at 336; *California Armored Car*, 476 F. Supp. at 454; *Cross-Fla Barge Canal*, 329 F. Supp. at 544; *In re Ryder Truck Lines, Inc., Employment Practices Litig.*, 405 F. Supp. 308 (J.P.M.L. 1975). Indeed this Panel has consolidated as few as two cases. *See In re Clark Oil & Ref. Corp. Antitrust Litig.*, 364 F. Supp. 458 (J.P.M.L. 1973).

The six pending actions clearly present complex factual issues relating to unlawful employment practices. Thus, these six similar complex putative class actions, arising from defendants' same course of conduct, are well suited for consolidation.

### D. This Panel Should Transfer These Actions to the District of Nevada

#### 1. Las Vegas, Nevada Is the Most Convenient Forum

The six actions presently pending in six United States district courts all involve claims on behalf of state classes against defendant(s) from other states, meaning that "no single district stands out as the geographic focal point for this litigation." *In re Starlink Corn Prods. Liability Litig.*, 152 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001). Defendant Wal-Mart is headquartered in Arkansas.

Further, the representative plaintiffs are located in: Nevada (Nancy Hall); Alaska (John McFarlin); Idaho (Reginald Paul Jackson, Phil Ankenman, Bryan Trenkle, and Danny Christy); South Dakota (John Luce); Delaware (Dora Jackson); and Hawaii (Tammy Poha and Moke K. Palakiko).

Accordingly, the fact that no district has a superior nexus to this litigation leaves this Panel free to transfer this case based on considerations of convenience and judicial qualification. *See In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (the Panel noted that due to the dispersed plaintiffs and defendants, "no particular district emerge[d] as the center of gravity."); *see also In Re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379 (J.P.M.L. 2004) (the Panel consolidated and transferred actions pending in 7 districts based upon the convenience and resources available in the transferee district); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liability Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (after noting "this is truly a nationwide litigation in which no particular district or region emerges as the geographic center of gravity" the

Panel based its decision on selecting a "transferee judge with the ability and temperament to manage this large and growing litigation.").

The District of Nevada is a particularly convenient forum for litigation after consolidation of these actions. In *In re Worldcom, Inc. Sec. "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002), this Panel consolidated several actions and transferred the consolidated action, noting, in particular, that "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed, support system for legal services." All of these arguments holds true for consolidation and transfer to Las Vegas. *See In re Musha Cay Litigation*, 330 F.Supp.2d 1364 (J.P.M.L. 2004); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 290 F.Supp.2d 1376 (J.P.M.L. 2003).

In step with *Worldcom*, the District of Nevada is the most convenient transferee forum based on geography and ease of access. First, Las Vegas is readily accessible by air travel from major cities across the United States. Approximately twenty major airlines serve this airport, with direct flights from numerous major cities. *See* Exhibit A. Las Vegas has ample hotel and office accommodations and offers a well developed support system for legal services. *See Worldcom*, supra. There are several major hotels located within 2 miles of the airport and numerous others within 15 miles. *See* Exhibit B. The McCarran International Airport is located 9.7 miles or approximately 15 minutes from the courthouse. *See* Exhibit C. With numerous car rental agencies and taxis servicing the airport, transportation to the Court is convenient. Accordingly, convenience

concerns also support transferring and consolidating these actions in the District of Nevada.

### 2. Judicial Statistics Favor Consolidation in the District of Nevada

Another important factor for determining the most appropriate forum for multidistrict litigation is the speed and efficiency with which the available districts manage their respective caseloads. *See In re Laughlin Prods., Inc. Patent Litig.*, 240 F. Supp. 2d at 1359 (transfer based in part on fact that district "enjoys general caseload conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote the time to pretrial matters that this docket is likely to require."); *Preferential Drug*, 429 F. Supp. at 1029 (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *Corn Derivatives*, 486 F. Supp. at 932 (faster docket cited as a consideration for choice of transfer forum).

Data for the twelve month period ending September 30, 2004, the most recent data available from the Administrative Office of U.S. Courts, supports transfer to the District of Nevada based on its record of efficiently and expeditiously resolving litigation. In particular, the median time from filing to final disposition of civil cases in the District of Nevada was 7.7 months, less than the time spent resolving litigation in the District of Alaska (9.5 months), the District of South Dakota (11.8 months), the District of Delaware (14.0 months), the District of Idaho (11.6 months) and the District of Hawaii (9.6 months). *See* U.S. District Court – Judicial Caseload Profiles, attached hereto as Exhibit D.

As detailed above Federal Court Management Statistics strongly support transfer to the District of Nevada based on its record of expeditiously resolving civil litigation.

### 3. The District of Nevada Has the Resources and Judicial Expertise to Properly Conduct this Case

The District of Nevada has the capacity and capability to manage a multi-district litigation case. As of September 12, 2005, there were three MDL cases pending in the District of Nevada. *See, e.g., In re Musha Cay Litigation*, 330 F. Supp. 2d 1364 (J.P.M.L. 2004); *In re NOS Communications, Inc., Billing Practices Litigation*, (J.P.M.L. 2000) *In re Western States Wholesale Natural Gas Antitrust Litigation*, 290 F. Supp. 2d 1376 (J.P.M.L. 2003).[6] The District of Nevada has seasoned jurists and magistrates who can direct this litigation on a steady and expeditious course. In fact, the *Hall* case has been assigned to the Honorable Philip M. Pro, a jurist with significant experience who was appointed to the Court in 1987 and previously served as United States Magistrate Judge for the District of Nevada, during which he supervised pretrial proceedings in the MGM Grand Hotel Fire Litigation.

### 4. Judge Philip M. Pro of the District of Nevada Is Experienced in Handling Complex and Multidistrict Cases

Finally, the experience and ability of the Honorable Philip M. Pro is another factor supporting transfer to the District of Nevada. The availability of an experienced and capable judge weighs in favor of transferring MDL litigation to that district. *See e.g., Hawaiian Hotel*, 438 F. Supp. at 936; *In re Sugar Indus. Antitrust Litig.*, 437 F. Supp. 1204, 1208 (J.P.M.L. 1977); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970). The experience and knowledge of a particular judge is one of the

---

[6] In In Re Western States, Judge Pro remanded the cases to the Superior Court of the State of California. *See In re Western States Wholesale Natural Gas Antitrust Litigation*, 346 F. Supp. 2d 1123, 1142 (D. Nev. 2004).

factors that may be considered in determining the appropriate transferee forum. *See e.g., In re "Factor VIII or IX Concentrate Blood Prod. Liab. Litig.,"* 853 F. Supp. at 455; *In re Silicon Gel Breast Implants Prods. Liab. Litig.,* 793 F. Supp. at 1101; *In re Data General Corp. Antitrust Litig.,* 470 F. Supp. 855, 859 (J.P.M.L. 1979).[7]

Judge Pro is eminently qualified to preside over this litigation. During his tenure, Judge Pro has handled numerous complex matters, including antitrust litigation, class actions and a multidistrict case. As stated by this Panel in 2003, "[b]y centralizing this litigation in the District of Nevada before Judge Pro, we are able to entrust this important assignment to an able jurist who can steer this litigation on an expeditious course, ... ." *See In re Western States,* 290 F. Supp.2d at 1378.

In sum, the balance of convenience and efficiency favor consolidation and transfer to the District of Nevada it offers a centralized location that is easily accessible and a judge that is well suited to supervise this complex class action litigation. Accordingly, Nancy Hall suggests that judicial efficiency would best be served by consolidating and transferring these actions to the United States District Court for the District of Nevada.

## IV. CONCLUSION

For the foregoing reasons, consolidation of these putative class actions will further "the convenience of parties and witnesses and [would] promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Therefore, for the reasons set forth above, Nancy Hall respectfully requests that this Panel enter an order transferring the actions listed in the Schedule of Related Actions and any Tag Along cases to the

---

[7] Familiarity with this particular case is not a factor because none of the six pending actions has yet advanced past the preliminary filing.

United States District Court for the District of Nevada for consolidated and coordinated pretrial proceedings.

Dated: November 3, 2005

Respectfully submitted,

Robert J. Bonsignore (Mass BBO #547880)
Daniel D'Angelo (Mass. BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Tel: (781) 391-9400
Fax: (781) 391-9496

Dirk A. Ravenholt (Nevada Bar # 6101)
RAVENHOLT & ASSOCIATES
2013 Alta Drive
Las Vegas, Nevada 89106
Nevada Bar No. 006101
Tel: (702) 647-0110
Fax: (702) 647-6332

**COUNSEL FOR MOVANT,
NANCY HALL**